AF Approval _~~~_                              Chief Approval _~~~_

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

    v.                                    CASE NO. 6:17-cr-205-Orl-40KRS

APRIL COLEEN MOORE
  a/k/a April Price

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

W. Stephen Muldrow, Acting United States Attorney for the Middle District

of Florida, and the defendant, APRIL COLEEN MOORE, a/k/a April Price,

and the attorney for the defendant, H. Kyle Fletcher, mutually agree as

follows:

**A.**    **Particularized Terms**

    1.    Count Pleading To

The defendant shall enter a plea of guilty to Count Five of the

Indictment.  Count Five charges the defendant with marriage fraud, in

violation of 8 U.S.C. § 1325(c).

    2.    Maximum Penalties

Count Five carries a maximum sentence of not more than 5

years' imprisonment, a fine of not more than $250,000 or twice the gross gain

Defendant's Initials _ACM_

caused by the offense, or twice the gross loss caused by the offense, whichever is greater, a term of supervised release of not more than 3 years, and a special assessment of $100 per felony count for individuals.  With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense, or to the community, as set forth below.

3.    Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count Five are:

First:    The defendant knowingly entered into a marriage; and

Second:   The marriage was for the purpose of evading any provision of the immigration laws.

4.    Counts Dismissed

At the time of sentencing, the remaining count against the defendant, Count One, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).



5.    <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6.    <u>Guidelines Sentence</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

7.    <u>Acceptance of Responsibility - Two Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a

Defendant's Initials _____    3

two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

8.   Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require.  If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG § 5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18

U.S.C. § 3553(e), or (3) both.  If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b).  In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9. <u>Use of Information - Section 1B1.8</u>

Pursuant to USSG § 1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG § 1B1.8(b).

10.   <u>Cooperation - Responsibilities of Parties</u>

    a.   The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime.  However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

    b.   It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

    (1)   The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

Defendant's Initials _acm_    6

(2)     The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

Defendant's Initials _ACM_                7

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

**B.     Standard Terms and Conditions**

1.     Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution

Defendant's Initials _ACM_                    8

to any victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.  The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.  On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.  The special assessment is due on the date of sentencing.  The defendant understands that this agreement imposes no limitation as to fine.

2.    <u>Supervised Release</u>

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the

conditions of release, the defendant would be subject to a further term of imprisonment.

3.  Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.  Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.



5.    <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition.  The defendant promises that her financial statement and disclosures will be complete, accurate and truthful and will include all assets in which she has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party.  The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years.  The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.  The defendant expressly authorizes the United States

Defendant's Initials _____        11

Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6. <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

Defendant's Initials           12

7.     <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.     <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

Defendant's Initials _ACM_                    13

9.   <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.   <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the

Defendant's Initials    14

attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

Defendant's Initials _CUCUV_            15

12.    <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.    <u>Certification</u>

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ___ day of __December_____, 2017.

W. STEPHEN MULDROW
Acting United States Attorney

_____          _____
APRIL COLEEN MOORE                 Christina R. Downes
  a/k/a April Price                   Special Assistant United States
Defendant                            Attorney

_____          _____
H. Kyle Fletcher, Esquire          Katherine M. Ho
Attorney for Defendant             Assistant United States Attorney
                                   Chief, Orlando Division

Defendant's Initials _____          16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

    v.                        CASE NO. 6:17-cr-205-Orl-40KRS

APRIL COLEEN MOORE
   a/k/a April Price

FACTUAL BASIS

I.   **Introduction**

    This case deals with a marriage fraud conspiracy that was ongoing from on or about February 2015, and on or about July 13, 2016.  At all times relevant to Counts One, Two, Five, Six, and Seven, the Immigration and Nationality Act ("INA") governed the immigration laws of the United States. Pursuant to the INA, non-citizens of the United States ("aliens") were not permitted to permanently reside in the United States unless they were lawful permanent residents ("LPRs").  A United States citizen ("USC") seeking to assist a relative who was an alien in obtaining LPR status in the United States was required to file United States Citizenship and Immigration Services ("USCIS") Form I-130, Petition for Alien Relative.  An alien seeking to obtain LPR status in the United States was required to file USCIS Form I-485, Application to Register Permanent Residence or Adjust Status.  When a USC

Defendant's Initials        17

filed a Form I-130 petition for an alien spouse, a visa could be immediately available to the alien spouse upon the approval of Form I-130, because the spouse was an immediate relative.  Immediate relatives had special immigration priority and did not have to wait in line for a visa number to become available for them to immigrate because there were an unlimited number of visas for spouses of USCs.  An immediate relative relationship allowed the alien spouses to apply on Form I-485, Application to Register Permanent Residence or Adjust Status, to become an LPR either at the same time or subsequent to their USC spouse filing Form I-130, Petition for Alien Relative.  The immediate relative petitioning process referenced above will hereinafter be referred to as the "Change of Status Packet."  Once USCIS approved a Change of Status Packet for LPR status, the agency issued the alien an LPR card (Form 1-551 or "green card").  The LPR card authorized the alien to permanently reside and lawfully work in the United States.

This case began around October of 2015, when Special Agent Curtis Johnson with Homeland Security Investigations (HSI) was at the Brevard County Clerk's office (Merritt Island branch) on matters unrelated to this case.  However, while there, he observed what he believed to be a fraudulent marriage taking place.  Subsequently, HSI met with the Brevard County Clerk of the Court and obtained the list of marriage license applications for 2015 to

Defendant's Initials _____   18

2016.  Notably, there appeared to be an unusually high amount of aliens from Uzbekistan, Kazakhstan, Kyrgyzstan, and other former Soviet countries where Russian is still spoken, engaging in marriages to USCs in Brevard County.  Also of note is that that many of the addresses provided by the aliens were from outside of Florida while many of the USCs provided Cocoa, Florida, addresses.

## II.   Previously Convicted Co-Conspirators

### A.   *Denis Yakovlev*

Based on the investigation efforts which began in October of 2015 and the information learned during an undercover operation, HSI obtained a search warrant for Denis Yakovlev ("Yakovlev") and Meghan Toole's ("Toole") shared residence and executed the search warrant on July 13, 2016.  On that same day, they arrested Yakovlev and Toole pursuant to a criminal complaint authorized by Magistrate Court Judge David A. Baker on July 6, 2016.  Post-*Miranda*, Yakovlev admitted to introducing approximately 100 individuals to each other over the last year and a half for the purpose of entering into sham marriages for immigration benefits.  He claimed his payment was anywhere from $1,000 to $2,000 and the USCs were typically paid a minimum of $10,000 with a maximum of $20,000.  The foreign nationals were from the Ukraine, Russia, Kazakhstan, Tajikistan, Uzbekistan,

Defendant's Initials _____        19

China, India, Belarus, and Turkey, and would travel to Brevard County from New York, Chicago, Miami, California, Philadelphia, New Jersey, Tennessee, and Orlando.  On August 12, 2016, Yakovlev entered a plea of guilty before Magistrate Court Judge Karla R. Spaulding to an Information charging one count of 8 U.S.C. §§ 1324(a)(1)(A)(iv) and 1324(a)(1)(B)(i), encouraging or inducing an alien to come to, enter or reside in the United States.  On November 7, 2016, Senior District Court Judge Gregory A. Presnell sentenced Yakovlev to fifteen months' imprisonment.

B.     *Megan Toole*

On August 11, 2016, Meghan Toole ("Toole") entered a plea of guilty before Magistrate Court Judge Gregory J. Kelly to an Information charging her with one count of marriage fraud in violation of 8 U.S.C. § 1325(c).  On November 9, 2016, District Court Judge Carlos E. Mendoza sentenced Toole to time served (110 days' imprisonment), followed by a term of twenty-four months' imprisonment.

III.   **The Defendant's Involvement in the Conspiracies**

A.     *Count One - The Nabili Marriage*

Beginning on an unknown date, but not later than in or about July 2015, and continuing through in or about April 2017, in the Middle District of Florida, and elsewhere, William Matthew Tex Price ("Price"),

Defendant's Initials _____   20

APRIL COLEEN MOORE, a/k/a April Price ("MOORE"), and Khagan

Mushfig Oglu Nabili ("Nabili") did knowingly and willfully combine,

conspire, confederate, and agree with each other, Yakovlev, and other

persons, to commit an offense against the United States, that is, to knowingly

enter into a marriage for the purpose of evading any provision of the

immigration laws, and to defraud the United States, that is, to enter into a

fraudulent marriage for the purpose of interfering with and obstructing USCIS

in its administration of the immigration laws of the United States.

Specifically, in or around August 10, 2015, MOORE approached a

USC and asked her to engage in a fraudulent marriage with an alien to obtain

LPR status for that alien (later determined to be Nabili).  MOORE told the

USC she could make about $700-$800 on the day of the marriage and more

afterwards.  She told the USC that she (MOORE) was in a fake marriage too

and could explain how it worked.  Later that night, MOORE and Price

"partied" with the USC and explained to her how the scheme worked and

convinced her to engage in a fraudulent marriage the next day.  So, on the

next day, the USC entered into a fraudulent marriage with Nabili so that

Nabili could obtain LPR status.  On the same day as the marriage, Yakovlev

paid the USC approximately $700-$800 in cash for entering into a fraudulent

marriage with Nabili, and he also paid PRICE a cash payment for recruiting

the USC into a fraudulent marriage.  On or about July 26, 2016, the USC and

Nabili filed and caused to be filed a Change of Status Packet with USCIS.

The Change of Status Packet remains pending.

      B.     *Count Five - The Tsoy Marriage*

On or about July 6, 2015, in Brevard County, Florida, in the Middle

District of Florida, MOORE and Valeriy Tsoy ("Tsoy") did knowingly and

unlawfully enter into a marriage for the purpose of evading a provision of the

immigration laws of the United States.

Furthermore, after their fraudulent marriage, MOORE and Tsoy

caused a Form I-130, Petition for Alien Relative, to be filed with USCIS.  In

order to "backstop" (or substantiate) the fraudulent marriage, MOORE and

Tsoy conducted numerous acts intended to deceive USCIS during the

immigration application process.  For example, MOORE flew to New York

(where Tsoy resided) to meet Tsoy for the second time and prepare for the in

person interview with USCIS and sign documents intended to accompany

their immigration applications.  On August 20, 2015, December 21, 2015, and

January 19, 2016, MOORE also obtained New York identification cards to

show she resided with Tsoy in New York.  In addition, MOORE submitted an

altered lease agreement and joint utility bills with her I-130 petition, which

were meant to convince USCIS that she was in a legitimate marriage with

Defendant's Initials _(signature)_      22

Tsoy.  Lastly, on February 5, 2016, MOORE and Tsoy attended an in person interview with USCIS to establish the *bona fides* of the marriage.  As a result, USCIS approved the I-130 petition.